UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DAVID I.  SHEINFELD, | § | BANKR.  CASE NO.  00-30839-SAF-7 |
| | § | |
| Debtor, | § | |

| | | |
|---|---|---|
| DAVID I.  SHEINFELD | | |
| | | |
| Appellant, | § | |
| V. | § | CIVIL ACTION NO. 3:03-CV-2601-B |
| | § | |
| GARY M.  LEEDS AND THE LEEDS | § | |
| FAMILY PARTNERSHIP, | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM ORDER

Before the Court is an appeal by David I.  Sheinfeld ("Sheinfeld," the "Appellant" or the "Debtor") from an order of the bankruptcy court granting summary judgment in favor of Gary M. Leeds and the Leeds Family Partnership (collectively, the "Leeds Group" or the "Appellee") ("the Order") against Sheinfeld, finding that the Leeds Group's claim against Sheinfeld was not dischargeable by the Debtor in bankruptcy under 11 U.S.C. § 523(a)(2)(A) and (a)(4).  After reviewing the briefing of the parties, the Court conducted a hearing on the appeal on July 15, 2005. Having now conducted plenary review of the bankruptcy court's judgment, the Court **AFFIRMS** that judgment for the following reasons.

# I. BACKGROUND[1]

Sheinfeld filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on February 4, 2000. (R 951, 1019). The case was later converted to one arising under Chapter 7, and Jeffrey H. Mims was appointed as the Trustee on June 30, 2000. (R 951, 1025-26, 1028). There were two predominant creditors, the Leeds Group and Lumbermans Mutual Casualty Company, who claimed approximately $5.2 million and $2.9 million, respectively. (R 164-65). (R 19-63, 1022).

## A.     The Formation of TLS.

Sheinfeld had partnered with the Leeds Group, Richard Engelberg ("Engelberg"), James Enis ("Enis") and MHV Development Corporation ("MHV") in the Mission Hills Hotel Development ("MHHD"). (R 28-39, 954). MHHD was succeeded by TLS, a company that later "developed a resort hotel property in Rancho Mirage, California." (Appellant Brief at 5; R 28-39, 954). The interests in TLS changed hands, with Enis assigning his 10% interest in the company to LS Investments (a partnership in which Sheinfeld held an interest) in 1987.[2] (*Id.*). Three years later, in May 1990, Sheinfeld and Leeds bought Engelberg's 13.5% interest in TLS and then sold TLS to a group of Japanese investors for a profit of close to $20,000,000. (*Id.*). According to the Appellant, "Sheinfeld earned $1,000,000 from the proceeds with respect to the sale of Enis's interest in TLS," (R 400-01), and "[t]he remaining proceeds were divided between the Leeds Group and Sheinfeld

---

[1]The facts are derived from the parties' pleadings and the evidence contained in the record. Unless characterized as a contention by one of the parties, these facts are undisputed.

[2] Because of Sheinfeld's interest in LS Investments, the Appellant refers to the two collectively as Sheinfeld.

according to their ownership interests." (*Id.*).

**B.**     **Sheinfeld and the Leeds Group are Found Liable for Breach of Fiduciary Duties Owed to Enis and Engelberg.**

The Leeds Group filed a lawsuit against Sheinfeld on December 22, 1992, claiming that Sheinfeld had concealed Enis's assignment of interest to Sheinfeld and that Sheinfeld had misrepresented the allocation of the proceeds of TLS's sale. (*Id.*; R 357-369, 954-55). Later, in February 1993, Enis and Engelberg also filed a lawsuit – against the Leeds Group and Sheinfeld – seeking damages related to their interests in the partnership and the sale of the partnership from which Sheinfeld and the Leeds Group had greatly profited. (*Id.*; R 955). The two lawsuits were consolidated and ultimately after a trial on the merits a jury found that Sheinfeld and the Leeds Group had breached fiduciary duties to Engelberg and Enis, and the state district court ruled in favor of Enis and Engelberg against Sheinfeld and the Leeds Group, finding the Defendants jointly and severally liable for $2,319,456.50 (Enis) and $2,187,856.50 (Engelberg), inclusive of attorneys' fees and costs. (*Id.*; R 260-73). That judgment was ultimately affirmed by the California state appellate Court. (*Id.*; R 275-336). According to the Leeds Group, Sheinfeld had previously indemnified them against any potential liability to Enis (R 400-01).

**C.**     **Arbitration of Contribution Issues Between the Leeds Group and Sheinfeld.**

In February 1995, before the trial in California state court, Sheinfeld and Leeds had entered into an Arbitration Agreement under which the two parties agreed to dismiss their causes of action against one another and to arbitrate any contribution issues arising from any potential finding of liability to Enis and Engelberg. (*Id.* at 7; R 390-98). Following the judgment in the California case, the San Diego County Court entered an Order of Stipulation by Sheinfeld and the Leeds Group

binding themselves to the Arbitration Agreement.   (*Id.* at 8; R 275-336).   The day prior to Arbitration, however, Sheinfeld filed a Chapter 11 bankruptcy petition in the Bankruptcy Court for the Northern District of Texas, and the arbitration was stayed pursuant to the Bankruptcy Code's automatic stay provision in 11 U.S.C. § 362(a).   (*Id.*).

According to the Appellant, "the Leeds Group participated fully in the bankruptcy case," filing a proof of claim for $5,123,337 on June 7, 2000."   (*Id.*; R 352-401).   Then, on May 9, 2000, the bankruptcy court granted the Leeds Group's motion to lift the automatic stay in order to pursue the arbitration to liquidate its claims against Sheinfeld.   (*Id.* at 8-9; R 951, 1022, 1026, 186-89).

Pursuant to 11 U.S.C. §§ 541, 1104, and 1106, the Trustee for Sheinfeld's bankruptcy estate participated in the negotiation of the arbitrable claims with the Leeds Group.   (*Id.* at 9-10; R 144-56, 161-63, 222-251).   On November 28, 2000, the Trustee entered into a Settlement Agreement with the Leeds Group establishing that the Leeds Group had a valid "general unsecured claim" against the estate in the amount of $5,213,337.30.   (*Id.*; R 144-152).   The Trustee likewise agreed not to pursue any counterclaims against the Leeds Group.   (*Id.*).   The Settlement Agreement provided that the Leeds Group was to receive "normal *pro rata* distributions until the sum of $75,000 had been paid to [it]," and that "thereafter distributions on such claim shall be subordinate to other unsecured claims until such time as all other general unsecured claims are paid in full."   (*Id.*).   Additionally, the Settlement Agreement provided that it would not affect any current dispute between the Debtor (Sheinfeld) and the Leeds Group set to be resolved through arbitration or by the bankruptcy court. (R 144-152).   Finally, the Settlement Agreement stated that "If, prior to any distribution from the bankruptcy estate, the Leeds Claim is determined *by arbitration* or otherwise to be less than $5,213,337.30, the Trustee shall use the lesser amount to calculate any distribution under this

Agreement." (R 144-152).

Over Sheinfeld's objection, the bankruptcy court approved the Settlement Agreement. (*Id.*; R 158-84, 952, 1030). Despite the provisions in the Settlement Agreement mentioning arbitration, Sheinfeld claims that, following the settlement agreement, neither he nor the Trustee had "any incentive to participate in the California arbitration for the purpose of setting a lesser amount of claim," because all claims in excess of $75,000 by the Leeds Group would have been "subordinate to distributions to other general unsecured claims." *Id.*

The arbitration was set for January 15, 2001. A week before that date, after receiving notification that the Leeds Group would proceed with the Arbitration, Sheinfeld moved for a continuance, and his motion was denied. (*Id.* at 12; R 197-99, 253-258, 1031-32). Neither the Trustee nor Sheinfeld participated in the Arbitration. (*Id.*). The Arbitrator entered an Arbitration Award in the full amount of the Leeds Group's claim on February 12, 2001 and also assessed punitive damages of $7,473,451.48. (*Id.* at 13; R 835-45). The Arbitration Award was ultimately confirmed on or about January 30, 2003 by the California appellate court. (*Id.*; R 850-64, 953).

**D.    The Bankruptcy Court Determines that the Leeds Group's Claim is Not Dischargeable.**

Following confirmation of the Arbitration Award, the Leeds Group sought summary judgment in bankruptcy court that their claim was not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4). (*Id.*). The Leeds Group argued that the findings of fact in the Arbitration Award conclusively established the elements necessary to satisfy dischargeability. The bankruptcy court agreed and, applying the doctrine of collateral estoppel, prohibited any relitigation of the factual findings of the Arbitrator and applied those facts to the elements of dischargeability, granting

summary judgment in favor of the Leeds Group on March 25, 2003. (*Id.*; R 985-1000). In that Order, the court limited the amount of the claim to the amount agreed to by the parties in the settlement agreement, $5,213,337.30, and entered judgment in that amount on July 13, 2003. (*Id.*; R 944-46).

**E.**     **Sheinfeld Appeals the Bankruptcy Court's Summary Judgment Order to this Court.**

Sheinfeld filed the instant appeal of the Order of the bankruptcy court on November 28, 2003, asserting the following points of error on appeal:

1.     Whether the Bankruptcy Court erred in entering its judgment that applied issue preclusion for purposes of dischargeability from findings incorporated in the Arbitration Award because the determination of those issues violated the automatic stay and the prior Stay Order of the Bankruptcy Court.

2.     Whether the Bankruptcy Court erred in entering its judgment that applied issue preclusion for purposes of dischargeability from the findings in the Arbitration Award because those issues were not fully and fairly litigated in the arbitration.

3.     Whether the application of issue preclusion from the findings of the Arbitration Award denied Sheinfeld due process of law.

(Appellant Brief at 2). The Court held a hearing on these issues on July 15, 2005. Each point will be addressed in turn below.

## II. ANALYSIS

**A.**     **Legal Standards.**

**1.**     **Appellate Jurisdiction.**

Section 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a) endow district courts with jurisdiction over bankruptcy appeals such as the one presently before the Court. A district court reviewing a decision of the bankruptcy court engages in plenary review of the

bankruptcy court's judgment, applying the standard of review "generally applied in federal court reviews," and "function[ing] as an appellate court." *Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *Matter of Coston*, 991 F.2d 257, 261 n. 3 (5th Cir. 1993) (citations omitted). The district court must not, however, set aside the bankruptcy court's findings of fact unless it is "clearly erroneous," and must give due regard to the opportunity the Bankruptcy Court had to judge the witnesses' credibility. *Webb*, 954 F.2d at 1104; Fed. R. Bankr. P. 8013. Under the law of the Fifth Circuit, although there may be evidence supporting a certain finding of fact, it is clearly erroneous if, after reviewing all of the evidence, the district court "is left with a firm and definite conviction that a mistake has been committed." *Matter of Missionary Baptist Foundation of Am., Inc.*, 712 F.2d 206, 209 (5th Cir. 1983) (citations omitted). The district court applies *de novo* review to mixed questions of law and fact as well as pure questions of law. *Matter of Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir.).

### 2. Dischargeability.

After the Chapter 7 proceeding has begun and a trustee has been appointed, the trustee takes control of and liquidates the debtor's estate and distributes the proceeds to the creditors, after which the debtor receives a discharge from the remaining pre-petition debt. *See* 11 U.S.C. § 541(a). There is an exception to the general rule of discharge, however, in cases where a creditor successfully objects pursuant to 11 U.S.C. § 523(a), as the Leeds Group has done.

### B. Issues on Appeal.

The Appellant seeks to overturn the bankruptcy court's Order granting summary judgment using the factual findings contained in the Arbitration Award to collaterally estop any relitigation of those facts for purposes of the dischargeability proceeding. Each of the Appellants' three identified

points of error on appeal will be addressed separately below.[3]

        **1.**     **The Findings of the Arbitrator Were Not Outside the Scope of the Relief Order.**

The Appellant first argues that the bankruptcy court erred in entering a summary judgment in favor of the Leeds Group that "applied issue preclusion for purposes of dischargeability from findings incorporated in the Arbitration Award because the determination of those issues violated the automatic stay and prior order of the bankruptcy court." (Appellant Brief at 19). According to Sheinfeld, the Arbitration exceeded the scope of the order lifting the automatic stay because the bankruptcy court "*specifically limited* the arbitration to matters concerned with the liquidation of the claims of the Estate and the Leeds Group."

The Appellant cites the Fifth Circuit's decision in *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 114 (5th Cir. 1987), for the proposition that "[t]he continuation of any litigation proceeding outside the Bankruptcy Court is ...limited by the scope of the automatic stay and any order of the bankruptcy court concerning stay." In *Casperone*, the Fifth Circuit held that the district court had exceeded the limits of the bankruptcy court's relief order by specifically finding that the debt at issue was non-dischargeable pursuant to Bankruptcy Code section 523(a). 819 F.2d at 116. *Casperone* is distinguishable from the instant case, however, because in *Casperone* the district court made findings specifically as to dischargeability, whereas the Arbitrator made factual findings relevant to the liquidation of the Leeds Group claim which the bankruptcy court later applied in

---

[3] Additionally, Sheinfeld makes the frivolous argument that the findings of the Arbitration Award conflict with the state court judgment apportioning liability jointly and severally against Sheinfeld and the Leeds Group (Appellant Brief at 20), but the two parties specifically agreed not to present their contribution claims against each other to a jury and there is thus no conflict to resolve. (R 645-46).

making its own determination regarding dischargeability.[4]   *Id.*   The Court therefore finds that Sheinfeld's point of error fails as a matter of law.   Notably, after the bankruptcy judge lifted the stay, Sheinfeld moved to continue the Arbitration in bankruptcy court and Judge McGuire of that court held a hearing and denied Sheinfeld's motion, specifically noting that there were California state law issues remaining regarding the liquidation of the debt, and cautioning Sheinfeld that the Arbitrator could possibly make findings regarding the elements of the Leeds Group's claims that may collaterally estop litigation of those same facts in the dischargeability adversary proceeding before the bankruptcy court.   (R 761-62; 798; 803).

The Appellee further maintains that Sheinfeld's first point of error also fails because Sheinfeld failed to bring it to the attention of the bankruptcy court, thus constituting waiver. (Appellee Brief at 19-20; R 107-08, 803, 890, 917); *see Johnson v. Cottonport Bank*, 259 B.R. 125, 128 (W.D. La.  2000) ("Arguments not raised before the bankruptcy court are waived on appeal."). According to the Appellee, Sheinfeld never argued "that the arbitrator violated the automatic stay in bankruptcy by issuing an award or by making findings of fact."   (Appellee Brief at 3).   This assertion was confirmed during the July 15, 2005 hearing. Thus, Sheinfeld's first argument is wanting for the additional reason that he has brought it up for the first time only on appeal. *Johnson*, 259 B.R. at 128.

## 2.     The Bankruptcy Court Properly Applied Collateral Estoppel in the

_____

[4]  At the July 15, 2005 hearing, Sheinfeld an additional case in an effort to support this argument. In the case of *In re Epstein*, 314 Bankr.  591 (Bankr.  S.D. Tex.  May 2004), an arbitration panel determined, without a relief order from the bankruptcy court modifying the automatic stay, that the stay did not apply, and went forth with arbitration.  This case is clearly distinguishable from the instant case, however, because there was a valid Relief Order in place allowing for arbitration to liquidate the Leeds Group claim.

**Dischargeability Proceeding to the Facts Previously Litigated by the Arbitrator.**

The Appellant's second point of error on appeal is that the bankruptcy court erred in applying issue preclusion to collaterally estop relitigation of certain facts determined by the Arbitrator because those facts were not "actually litigated" as is required by the doctrine of full faith and credit. (Appellant Brief at 21) (citing *Next Level Comm., et al. V. DSC Domm. Corp., et. al.*, 179 F.3d 244, 250 (5th Cir. 1999) for the factors necessary to apply collateral estoppel). Initially, the Court finds that this argument, like the Appellant's first argument, has been waived because Sheinfeld failed to bring it to the attention of the bankruptcy court at the summary judgment stage. *See Johnson*, 259 B.R. at 128. Sheinfeld also waived any objection of standing or jurisdiction by failing to appear at the Arbitration, a holding which was affirmed on appeal in California state court. Out of an abundance of caution, however, the Court will analyze this point of error on its merits.

In *Next Level Comm.*, the Fifth Circuit explained the factors necessary to properly apply collateral estoppel. 179 F.3d at 250. First, the prior litigation and instant litigation must involve identical issues. *Id.* Second, the issue must have been "actually litigated" in the previous case. *Id.* Third, "'the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.'" *Id.* (citations omitted). Additionally, the two tribunals analyzing the issue must use the same legal standard to determine the issue. *Id.* (citations omitted). The Court emphasized, however, that the "actual claims" as well as the "subject matter" involved in the previous action and the instant case may be different. *Id.*

The element the Appellant specifically challenges is the second. (Appellant Brief at 21). Sheinfeld argues that the factual determinations were not "actually litigated" as required by the

collateral estoppel doctrine.  (*Id.*).  It is undisputed that Sheinfeld did not participate in the Arbitration although he was given notice that it was going forward.  As justification for his non-participation, Sheinfeld claims he "reasonably believed he had no standing or interest to participate in the arbitration," and that "in fact, there was no real point to the arbitration at all."  (*Id.* at 23).

In his briefing and at the hearing before this Court on July 15, 2005, the Appellant confirmed that he was aware of the arbitration setting, and that he went before the bankruptcy court to request a continuance of the proceeding, but that his request was denied and the bankruptcy court noted the possibility that certain facts determined by the Arbitration may have a collateral estoppel effect in the dischargeability proceeding.  (July 15, 2005 Hearing Trans.).  Nonetheless, Sheinfeld did not appear before the Arbitrator, even to argue lack of standing or jurisdiction.  (*Id.*).  Sheinfeld did, however, include these arguments in his appeal of the Arbitration Award in the California state court system, and ultimately lost.  (*Id.*).

Sheinfeld acknowledges that a "post-answer default," which can be likened to Sheinfeld's actions in failing to appear at the Arbitration, "may have preclusive effect if the judgment contains specific factual findings on the matters actually at issue," (*Id.* (citing *In re Turner*, 144 B.R. 47, 722 F.2d 1253, 1258 (5th Cir. 1984)), but he claims, without citing any specific part of the Arbitration Award, that the findings were conclusory rather than specific," and thus were "not fully litigated for purposes of determining dischargeability."  (Appellant Brief at 23-24).  Any argument regarding specificity, however, has been waived because Sheinfeld did not bring this argument before the bankruptcy court, nor did he appear at the Arbitration.  (R 900).  *See Johnson*, 259 B.R. at 128.  Sheinfeld had the opportunity to appear at the Arbitration but chose not even though he had begun preparation before filing bankruptcy, was given notice that the Arbitration would proceed, and was

given notice by the bankruptcy court that collateral estoppel could be implicated from the Arbitrator's findings. Sheinfeld's actions in failing to appear are akin to a post-answer default, and therefore his claim that the factual determinations were not fully litigated fail as a matter of law.[5] *In re Turner*, 144 B.R. 47, 722 F.2d 1253, 1258 (5th Cir. 1984).

### 3.    Sheinfeld's Due Process Rights Are Not Implicated By the Bankruptcy Court's Order Granting Summary Judgment.

The Appellant's third issue on appeal is an argument that his due process rights were violated because (1) "he reasonably believed he had no need to participate in the Arbitration given the Stay Order and the Settlement Agreement," and (2) his request for continuance of the Arbitration was denied although he did not have adequate time to proceed and prosecute any claims or defenses. (Appellant Brief at 23). This argument, like the others, fails. Sheinfeld raised his concerns before the bankruptcy court in seeking a continuation of the Arbitration, and the bankruptcy court, aware of the language in the Relief Order, reviewed and disregarded Sheinfeld's argument that the impending Arbitration would exceed the boundaries of that Order, which only allowed for arbitration to liquidate the Leeds Group claim. (Appellee Brief at 16; R 125). As the Appellee has correctly stated, "Sheinfeld could have but failed to defend himself against the claims asserted by the Leeds Group." (*Id.* at 17) (citing, e.g., *Midwest Mutual Ins. Co. v. Shapiro*, 22 B.R. 685 (Bankr.

---

[5]    At the July 15, 2005 hearing, Sheinfeld cited a case not mentioned in his brief, *Gupta v. E. Idaho Tumor Inst.* (*In re Gupta*), 394 F.3d 347 (5th Cir. 2004), as an "example of the limitations that apply in the circuit to application of collateral estoppel to dischargeability matters." (Appellant's Citation to Supplemental Authorities at 2). However, in *Gupta*, the Court actually emphasized that "a bankruptcy court may apply collateral estoppel in a dischargeability proceeding to preclude relitigation of state court findings that are relevant to dischargeability." *Id.* (citing *Schwager v. Fallas* (*In re Schwager*), 121 F.3d 177, 181 (5th Cir.1997) (citing *Grogan v. Garner*, 498 U.S. 279, 285 n. 11 (1991)). Unlike the present situation, the holding in *Gupta* finding that collateral estoppel should not have been applied to the dischargeability proceeding, turned on a conflict between Texas law definitions of fiduciary relationships and federal law definitions. The Appellant has not averred that any such conflict exists here.

E.D. Pa. 1982) (holding that a bankrupt does not lose his right to raise defenses and counterclaims relating to dischargeability of a debt).

It is undisputed that Sheinfeld knowingly and purposefully entered into an agreement with the Leeds Group to arbitrate the contribution issues, but filed for bankruptcy on the eve of the Arbitration. Furthermore, the Court has previously determined that Sheinfeld waived his right to assert affirmative defenses and counterclaims by choosing not to appear and raise them at the Arbitration. *See Johnson*, 259 B.R. at 128. He did, however, raise the due process argument, as well as others, in an appeal of the Arbitration Award in California State Court, where he was afforded a full opportunity to attack the validity of the Award on appeal and ultimately lost. (*Id.*; R 991).

Finally, the Settlement Agreement Sheinfeld clearly contemplated the possibility of continuing with the Arbitration and specifically noted that it did not affect disputes between Sheinfeld and the Leeds Group, yet Sheinfeld chose not to participate in the Arbitration. Judge McGuire of the bankruptcy court also clearly communicated the possibility of a collateral estoppel effect from findings of the Arbitrator to the dischargeability proceeding at the hearing on Sheinfeld's motion for a continuance of the Arbitration. For these reasons, the Court finds that the bankruptcy court did not deprive Sheinfeld of due process in its Order granting summary judgment.

4.    **The Bankruptcy Court Did Not Err in Referring the Liquidation Issue to Arbitration.**

The Appellant has also included an argument in his briefing which he did not specifically identify as an issue on appeal, that the referral of the dispute to arbitration by the bankruptcy court violated the "jurisdictional limits of the [ADR] statute" by referring a core proceeding – the issue of dischargeability." (*Id.* at 20). Sheinfeld claims that the bankruptcy court essentially referred the

-13-

issue of dischargeability to arbitration without Sheinfeld's consent in violation of 28 U.S.C. § 654. Sheinfeld relies on the Fifth Circuit's opinion in *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1070 (5th Cir. 1997), in which the Fifth Circuit held that the bankruptcy court had not abused its discretion by refusing to stay a declaratory judgment action in favor of arbitration. *Gypsum*, however, did not involve a dischargeability proceeding. Moreover, the bankruptcy order lifting stay in the instant case specifically referred the issue of liquidation of the Leeds Group claim, not the issue of dischargeability, to arbitration. The Court finds that the bankruptcy court properly concluded at the March 25, 2003 summary judgment hearing that the ADR statute did not apply to the instant case in light of Sheinfeld's previous consent to the Arbitration via execution of the Arbitration Agreement consenting to arbitration.

## III.  CONCLUSION

For the reasons discussed, the Order of the bankruptcy court granting summary judgment in favor of the Leeds Group is **AFFIRMED** in its entirety.

SO ORDERED.

SIGNED July   19th   , 2005

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-14-